Filed 5/8/25  P. v. Flener CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GARRISON DREW FLENER,<br><br>Defendant and Appellant. | C097281<br><br>(Super. Ct. No. P20CRF0485) |

A jury convicted defendant Garrison Drew Flener on seven counts of committing lewd and lascivious acts upon his stepdaughters.  The trial court imposed consecutive sentences of 15 years to life in prison on each count.

Defendant now contends (1) the trial court erred in admitting uncharged sexual offense evidence under Evidence Code section 1108 because the uncharged acts did not violate Penal Code section 647.6[1] (annoying or molesting a child) as found by the trial court; (2) in addition, the uncharged offense evidence was inadmissible under Evidence Code section 352; (3) there is insufficient evidence of lewd intent to support the count 6 and 7 convictions; (4) he received ineffective assistance because his trial counsel's

---

[1]  Undesignated statutory references are to the Penal Code.

1

closing argument conceded the issue of lewd intent; (5) CALCRIM No. 1193 erroneously permitted the jury to use Child Sexual Abuse Accommodation Syndrome (CSAAS) evidence to determine whether he committed the charged offenses; (6) expert witness testimony about CSAAS was inadmissible under *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*) and *Frye v. United States* (D.C. Cir. 1923) 293 Fed. 1013 (collectively *Kelly/Frye*); (7) in imposing consecutive sentences, the trial court relied on improper or unsupported aggravating circumstances and did not consider his lack of a criminal record; and (8) the above errors cumulatively deprived him of his constitutional right to due process of law.

To the extent defendant did not forfeit his claims, we find no merit in his contentions. We will affirm the judgment.

BACKGROUND

Defendant was married to the mother of his stepdaughters, Does 1, 2, and 3. The stepdaughters lived with their mother and defendant every other week. The charged offenses relate to Does 1 and 2.

Doe 1 was 15 years old at the time she testified. She said defendant put his hand under Doe 1's clothes and touched her vagina when they lay on the living room couch to watch a show after everyone else had gone to bed. He did that probably more than five times. She was in the fifth or sixth grade the first time it happened. One time he said it was dry and licked his finger before continuing to touch her vagina. He touched the outside and inside of her vagina. On another occasion, Doe 1 awoke in her bed to find defendant touching her crotch with his hand. Doe 2 was asleep in the same room. There was also a time when defendant moved her hand up and down his hard penis. And when Doe 1 was in the seventh grade, defendant put his hand under her clothes and moved his hand on her breast as she sat on his lap.

Doe 2 was 13 years old at the time of the trial. Defendant told her they would watch a show together and he would do the same with her sisters. She picked a show

to watch. She and defendant watched the show every other week, at night, in the living room when no one else was around. On more than five occasions when they were watching their show, defendant put his hand down the waistband of her shorts and on the side of her upper thigh and rubbed her thigh. Sometimes his hand was on top of her underwear and sometimes it was under her underwear. She was in the fifth to sixth grade when that first happened.

A video recording of Doe 2's multi-disciplinary interview was played at the trial. Doe 2 told the forensic interviewer that on 10 to 12 occasions, defendant put his hand down her waistband and under her underwear and touched the front and side of her thigh when they watched a show together. The first incident occurred at the start of her fifth grade year.

The prosecutor also presented evidence of uncharged sexual offenses by defendant through the testimony of Does 3 and 4. Doe 3 testified she was 12 years old (in the seventh and eighth grades) when she watched a show at night with defendant while everyone else was asleep. Defendant moved her shirt aside and rubbed her side with his thumb as they lay on the couch watching the show. Doe 4 is a cousin of the stepdaughters. One time when she was visiting her cousins, she showed defendant a game on her Nintendo Switch. It was night time and everyone else was in their rooms. She sat on defendant's lap on the couch. He placed his hand under her thigh and wrapped his fingers around the thigh. His fingers were close to and nearly touched her vagina. She was in eighth grade at the time.

Defendant testified at trial. He bonded with Doe 3 over video games and with Doe 2 over television shows. He bonded with Doe 1 over how to deal with ADHD and cooking. His relationship with the girls changed after he married their mother because he was the one who enforced the rules and the girls did not like that. He had Doe 3 pick a television show, and they watched Golden Girls together in order to bond. He watched

3

different shows with Does 1 and 2. He denied ever inappropriately touching the stepdaughters or the cousin. He said Does 1 and 2 were lying.

The jury found defendant guilty on counts 1 through 5 of committing a lewd and lascivious act upon Doe 1 with lewd intent in violation of section 288, subdivision (a). It found defendant guilty of the same crime in relation to Doe 2 on counts 6 and 7. It also found true an allegation that defendant committed the offenses against more than one victim. (§ 667.61, subd. (e)(4).) The trial court sentenced defendant to an aggregate prison term of 105 years to life.

## DISCUSSION

### I

Defendant contends that because the uncharged acts did not violate section 647.6 and thus are not sexual offenses, the trial court erred in admitting evidence of those acts under Evidence Code section 1108.

### A

The People moved in limine to admit uncharged acts by defendant involving Does 3 and 4 under Evidence Code section 1108 as acts that violated section 647.6, which makes it a misdemeanor to annoy or molest a child under 18 years of age. The offer of proof asserted that defendant lifted Doe 3's shirt, put his hand near her hip, and rubbed her side as the two lay on a couch cuddling and watching a show on defendant's cell phone after everyone else had gone to bed. According to the offer of proof, that type of act occurred once or twice when Doe 3 was 12 or 13 years old. The offer of proof further asserted that when Doe 4 was about 14 years old, defendant wrapped his hand under her upper thigh as Doe 4 sat on his lap. His hand got really close to her vagina but did not touch it. Doe 4 got up and went to bed after about 10 minutes.

The trial court said a section 647.6 violation does not require a touching and the issue was whether the alleged acts were objectively and unhesitatingly irritating or disturbing conduct that was motivated by an abnormal sexual interest in children.

4

It found the alleged acts satisfied those elements and were admissible under Evidence Code section 1108.

B

The People urge that defendant forfeited his appellate claim by not raising it in the trial court. It is true that defendant did not object to the uncharged offense evidence on the grounds asserted on appeal. However, the trial court raised whether defendant's conduct fell within section 647.6 and the People addressed that issue. Under the circumstances, we will consider defendant's claim on the merits.

Evidence Code section 1108 makes admissible evidence that the defendant committed an uncharged sexual offense or offenses in a criminal action in which the defendant is accused of a sexual offense as long as the evidence is admissible under Evidence Code section 352. (Evid. Code, § 1108, subd. (a).) Evidence Code section 1108 defines sexual offense to include a violation of section 647.6. (Evid. Code, § 1108, subd. (d)(1).) Whether the uncharged conduct constitutes a sexual offense is a legal question to be decided by the trial court before it can consider admitting the evidence under Evidence Code section 1108. (*People v. Cottone* (2013) 57 Cal.4th 269, 282-283.)

Under section 647.6, it is a misdemeanor to annoy or molest a child under 18 years of age. (§ 647.6, subd. (a); *People v. Lopez* (1998) 19 Cal.4th 282, 289 (*Lopez*).) "Annoy" and "molest" are synonymous and refer to conduct designed to disturb, irritate, offend, injure, or tend to injure another person. (*Lopez*, at p. 289.) Violation of the statute requires "(1) conduct a ' "normal person would unhesitatingly be irritated by" ' [citation], and (2) conduct ' "motivated by an unnatural or abnormal sexual interest" ' in the victim [citation]" or in children generally. (*Ibid.* [also stating that section 647.6, subdivision (a) does not require a touching]; see *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1162 (*Valenti*); *People v. Phillips* (2010) 188 Cal.App.4th 1383, 1395-1396.) We employ an objective test and do not consider the defendant's or child's mental state in

5

determining whether the defendant's conduct would unhesitatingly irritate or disturb a normal person. (*Lopez,* at pp. 290-291; *People v. Clotfelter* (2021) 65 Cal.App.5th 30, 51-54 (*Clotfelter*); *Valenti*, at p. 1162.) "The deciding factor . . . is that the defendant has engaged in offensive or annoying sexually motivated conduct which invades a child's privacy and security . . . ." (*People v. Kongs* (1994) 30 Cal.App.4th 1741, 1752, italics omitted.)

With regard to Doe 3, defendant lifted her shirt, put his hand near her hip, and rubbed her side as the two lay on a couch cuddling and watching a show after everyone else had gone to bed. As for Doe 4, defendant wrapped his hand under her upper thigh, close to her vagina. The trial court did not err in finding that such conduct would irritate a normal person and was motivated by an abnormal sexual interest.

Defendant's uncharged offenses are distinguishable from the conduct in *Valenti* and *People v. Carskaddon* (1957) 49 Cal.2d 423, 426, cases defendant cites for comparison. The appellate court in *Valenti* concluded that in light of the defendant's lengthy and close relationship with the alleged victims' family, a brief hug and a brief kiss on top of the head, with no evidence that the defendant tried to otherwise touch the alleged victims or himself or that he became aroused, was not objectively disturbing conduct. (*Valenti*, *supra,* 243 Cal.App.4th at p. 1163.) The appellate court in *Carskaddon* held there was no evidence the defendant committed an objectionable act when he sat in a public park with a six-year-old girl for about 10 minutes, did not touch her, bought her ice cream, and walked with her on a public street away from the park. (*Carskaddon,* at pp. 424-426.) Unlike in *Valenti* and *Carskaddon*, here defendant lifted Doe 3's shirt and rubbed her, and touched Doe 4 close to her vagina.

Defendant's contention lacks merit.

## II

In addition, defendant argues the uncharged offense evidence was inadmissible under Evidence Code section 352.

6

## A

Defendant moved in limine to exclude the uncharged offense evidence under Evidence Code section 352.

The trial court conducted an Evidence Code section 352 analysis before admitting the uncharged offense evidence under Evidence Code section 1108. It said Does 1 through 4 were of similar age at the time of the alleged offenses and the molestation of Does 3 and 4 involved circumstances very similar to those described by Does 1 and 2. It also found that the uncharged offenses were not as inflammatory as the charged offenses and there was no possibility of confusion because the conduct involved different people. The trial court said based on the information provided, it appeared the uncharged offense evidence would not take an undue amount of time to present. Finally, it said it would instruct the jury on the use of uncharged offense evidence.

## B

In general, evidence of a defendant's uncharged conduct is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid. Code, § 1101, subds. (a), (b); *People v. Kipp* (1998) 18 Cal.4th 349, 369 (*Kipp*).) But Evidence Code section 1108 is an exception. (*People v. Erskine* (2019) 7 Cal.5th 279, 295.) Under Evidence Code section 1108, the trier of fact may consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses and that the defendant committed a charged sexual offense. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164, 1166-1167.)

Nevertheless, uncharged sexual offense evidence is inadmissible if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (Evid. Code, §§ 352, 1108, subd. (a).) In evaluating whether the probative value of the uncharged offense evidence outweighs any prejudice from its admission, a trial court must "consider such factors as its nature, relevance, and

7

possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*).)

The weighing process under Evidence Code section 352 is entrusted to the sound discretion of the trial judge, who is in the best position to evaluate the evidence. (*Falsetta, supra*, 21 Cal.4th at pp. 917-918.) We review a trial court's Evidence Code section 352 and 1108 determinations under the deferential abuse of discretion standard. (*People v. Avila* (2014) 59 Cal.4th 496, 515; *Kipp, supra*, 18 Cal.4th at pp. 369, 371.)

Defendant contends the conduct involving Does 3 and 4 was "ambiguous at best and within the range of normal contact that does not carry sexual connotations" and had no probative value. We disagree. As we have indicated, a trier of fact could have reasonably found that the uncharged conduct would be irritating to a normal person and sexually motivated. Although admissibility under Evidence Code section 1108 does not require the uncharged and charged sex offenses to be similar (*People v. Jones* (2012) 54 Cal.4th 1, 50), as the trial court found, the conduct involving Does 1 through 4 bore similarities, adding to the probative value of the uncharged offense evidence. Does 1 through 4 were in their early teens at the time of the offending conduct. Defendant was related to the girls by marriage. The offenses occurred in his home, after everyone else had gone to bed. Defendant touched each girl inappropriately while laying with them or cuddling with them. The uncharged offense evidence was probative of defendant's lewd intent and also the credibility of defendant and Does 1 and 2. (*Falsetta, supra*, 21 Cal.4th at p. 922 [stating that other crimes evidence may be considered for any proper purpose]; see *People v. Holford* (2012) 203 Cal.App.4th 155, 182 [stating that Evidence Code

8

section 1108 recognizes that evidence of uncharged sexual offenses is uniquely probative in cases involving sex crimes]; *People v. Branch* (2001) 91 Cal.App.4th 274, 282 ["evidence of a 'prior sexual offense is indisputably relevant in a prosecution for another sexual offense' "].)  Uncharged sexual offense evidence is highly probative where, as here, defendant denies the charged offenses occurred and there is no forensic evidence proving the charged offenses occurred.  (*People v. Robertson* (2012) 208 Cal.App.4th 965, 993 (*Robertson*); *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395.)

Defendant appears to argue there was a danger the jury would punish him for the uncharged sexual offenses because he was not convicted of those offenses.  But nothing in the record suggests the jury would be informed whether the uncharged offenses were prosecuted.  We do not consider defendant's assertion that the jury knew defendant had not been convicted of the uncharged offenses because the factual assertion is made without citation to the record.  (*People v. Myles* (2012) 53 Cal.4th 1181, 1222, fn. 14.)  Further, as defendant concedes, the uncharged offenses were not more inflammatory than the charged offenses, reducing the risk that the jury might be inclined to punish defendant for the uncharged offenses.  (*People v. Phillips* (2022) 75 Cal.App.5th 643, 676.)  The trial court said it would instruct the jury on the limited use of uncharged offense evidence, further reducing that risk.  (See *Falsetta, supra*, 21 Cal.4th at p. 920.)

Defendant claims the uncharged offense evidence was remote.  The People's in limine motion indicated Doe 3 was 12 or 13 years old at the time of the uncharged sexual offenses and Doe 4 was about 14.  Doe 3 was 17 years old at the time of the trial.  Doe 4 was 16.  Uncharged sexual offenses committed around the same time as the charged offenses and two to five years prior to trial are not too remote to be admissible under Evidence Code section 352.

Defendant also argues the trial court failed to consider that Does 1 through 4 discussed their allegations with each other or heard about them from others.  But he did not object to the uncharged offense evidence on that basis in the trial court, and nothing

9

in the record before the trial court at the time it decided the in limine motions showed that the complainants discussed their allegations with each other. We review the correctness of the trial court's ruling at the time it was made, not by reference to evidence produced at a later date. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243; *Robertson, supra,* 208 Cal.App.4th at p. 991.)

The trial court did not abuse its discretion.

III

Defendant contends there is insufficient evidence of lewd intent to support the count 6 and 7 convictions.

Defendant was charged in counts 6 and 7 with violating section 288, subdivision (a) by touching Doe 2. The elements of the crime are (1) the defendant willfully committed a lewd or lascivious act (2) upon or with the body, or any part thereof, of a child under 14 years of age (3) with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of the defendant or the child. (§ 288, subd. (a); *People v. Memro* (1985) 38 Cal.3d 658, 697, overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.) A touching of any part of the child's body satisfies the first element, even if the touching is outwardly innocuous and inoffensive, as long as the defendant harbored the requisite lewd intent. (*People v. Shockley* (2013) 58 Cal.4th 400, 404; *Lopez, supra*, 19 Cal.4th at pp. 289, 291; *People v. Martinez* (1995) 11 Cal.4th 434, 442-445, 450, 452 (*Martinez*).) The controlling factor is the purpose of the perpetrator in touching the child. (*Martinez*, at p. 444.) The requisite intent may be inferred from all the circumstances, including the nature of the charged act, other acts of lewd conduct charged in the case, and clandestine meetings. (*Id.* at pp. 444-445, 452; *In re Randy S.* (1999) 76 Cal.App.4th 400, 405-407; *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1379-1380 (*Gilbert*) [concluding that the jury could reasonably have found lewd intent based on the act of rubbing the victim's stomach, lower back and bare

10

thigh because there was evidence of a pattern of conduct with the victim and other young girls.)

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) We do not reweigh evidence. (*Ibid*.)

Applying the above principles, we conclude substantial evidence supports the jury's finding that defendant acted with lewd intent when he touched Doe 2. Criminal intent will rarely be shown by direct evidence and must frequently be inferred from a defendant's conduct and the surrounding circumstances. (*Martinez, supra*, 11 Cal.4th at pp. 445, 452; *Gilbert, supra*, 5 Cal.App.4th at p. 1380.) Here, the nature of the charged act, and the circumstances in which they occurred, are highly relevant. On more than five occasions, defendant placed his hand inside the waistband of Doe 2's shorts, touched the side of her upper thigh, and rubbed her thigh. Sometimes his hand was over Doe 2's underwear and sometimes he put his hand under Doe 2's underwear. The touching happened when everyone else had gone to bed. Defendant committed similar acts against Doe 3 under similar circumstances. His lewd intent may also be inferred from his lewd conduct toward Doe 1. (*Martinez,* at pp. 444-445.) He touched Doe 1's vagina and breast, moved Doe 1's hand on his penis, and got in Doe 1's bed and touched her crotch. Defendant's sufficiency of the evidence challenge is without merit.

11

# IV

Defendant also claims his trial counsel rendered ineffective assistance by arguing to the jury that he was guilty if he touched the girls, conceding the issue of lewd intent.

To establish ineffective assistance of counsel, a defendant must prove (1) that his trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674].) If a defendant makes an insufficient showing on either of those components, his ineffective assistance claim fails. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.) We review trial counsel's performance with deferential scrutiny, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, recognizing the many choices that attorneys make in handling cases and the danger of second-guessing an attorney's decisions. (*Maury*, at p. 389; *Strickland*, at p. 689.) On direct appeal, we will find a deficiency only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation for counsel's conduct. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Defendant denied doing anything inappropriate to Does 1 through 4. He accused Does 1 and 2 of lying. In his closing statement to the jury, defendant's trial counsel said this was a he-said-she-said case. Counsel argued defendant was telling the truth and his accusers were lying or misinterpreted what happened. In the context of the defense version of events, counsel argued the issue was whether defendant touched the girls. He said, "If [defendant] touched the girls, then he would be guilty. . . . But if he did not touch the girls, then he's not guilty." Defense counsel did not concede lewd intent or say that the jury need not decide whether the People had proven the requisite intent.

"The decision of how to argue to the jury after the presentation of evidence is inherently tactical" and we accord great deference to counsel's tactical choices. (*People v. Freeman* (1994) 8 Cal.4th 450, 498; see *People v. Mickel* (2016) 2 Cal.5th 181, 198; *Yarborough v. Gentry* (2003) 540 U.S. 1, 5-6 ["deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage"].) We decline to say that trial counsel's summation falls below an objective standard of reasonableness under prevailing professional norms. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1140, fn. 44 [concluding that trial counsel's all-or-nothing strategy was an informed tactical choice within the range of reasonable competence]; *People v. Samayoa* (1997) 15 Cal.4th 795, 846 [rejecting ineffective assistance claim where defense counsel's all-or-nothing approach could have been based on a considered tactical determination]; *Yarborough*, at p. 6 ["which issues to sharpen and how best to clarify them [in closing argument] are questions with many reasonable answers"].)

Defendant has not established that his trial counsel was deficient.

V

Defendant next contends CALCRIM No. 1193 erroneously permitted the jury to use CSAAS evidence to determine whether he committed the charged offenses.

Defendant did not object at trial to the CALCRIM No. 1193 instruction. Nevertheless, he asserts we may review his appellate claim because the challenged instruction misstated the law and affected his substantial rights. We will exercise our discretion to consider defendant's contention on the merits. (*People v. Grandberry* (2019) 35 Cal.App.5th 599, 604; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.)

Our review of an instructional error challenge is de novo. (*People v. Rivera* (2019) 7 Cal.5th 306, 326.) We consider the challenged instruction " 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.' " (*Ibid.*)

13

In undertaking this task, we assume the jurors are intelligent and capable of understanding and correlating the instructions given.  (*People v. Wetle* (2019) 43 Cal.App.5th 375, 382.)

California Courts of Appeal have long held that expert testimony on CSAAS is admissible for the limited purposes of dispelling misconceptions about child sexual abuse and helping the jury assess a complaining witness' credibility.  (*People v. Sedano* (2023) 88 Cal.App.5th 474, 479; *In re S.C.* (2006) 138 Cal.App.4th 396, 418; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744-1745; *People v. Housley* (1992) 6 Cal.App.4th 947, 954-956 (*Housley*); *People v. Gray* (1986) 187 Cal.App.3d 213, 217-218.)  Such evidence " ' "is admissible to rehabilitate [the child] witness's credibility when the defendant suggests that the child's conduct after the incident -- e.g., a delay in reporting -- is inconsistent with his or her testimony claiming molestation." . . . ' [Citation.]  [¶] However, CSAAS evidence ' "is not admissible to prove that the complaining witness has in fact been sexually abused." [Citation.]' "  (*Clotfelter, supra*, 65 Cal.App.5th at p. 64.)  The California Supreme Court has approved appellate decisions permitting limited admissibility of CSAAS evidence.  (*People v. Brown* (2004) 33 Cal.4th 892, 905-906; *People v. McAlpin* (1991) 53 Cal.3d 1289, 1298-1302 (*McAlpin*).)

Consistent with the case law, the trial court instructed the jury pursuant to CALCRIM No. 1193 as follows.  "You have heard testimony from Dr. Anthony Urquiza regarding Child Sexual Abuse Accommodation Syndrome.  [¶]  Dr. Anthony Urquiza's testimony about Child Sexual Abuse Accommodation Syndrome is not evidence that the defendant committed any of the crimes charged against him or crimes with which he was not charged.  [¶]  You may consider this evidence only in deciding whether or not [Doe 1, Doe 2, Doe 3, and Doe 4's] conduct was not inconsistent with the conduct of one who has been molested, in evaluating the believability of each of their testimony."  Defendant nevertheless contends the last sentence in the instruction allowed the jury to use CSAAS evidence to determine whether sexual abuse actually occurred because it is impossible to

evaluate the credibility of a complaining witness without evaluating whether her allegation of molestation is true. We disagree.

Defendant conflates two ways of using CSAAS evidence: (1) the use of CSAAS testimony as a factor in assessing a child witness's credibility, which is indirectly relevant to the defendant's guilt and is permissible, and (2) the use of CSAAS testimony to directly establish that the defendant molested the child, which is not permitted. (See *People v. Brackins* (2019) 37 Cal.App.5th 56, 71 [rejecting similar instructional error claim in a case involving expert testimony on intimate partner violence; stating, "[e]xpert testimony may not be improperly used to *directly* determine whether the abuse occurred. But like much of the other evidence that comes in at a trial, it may be used *indirectly* to assist the jury in evaluating whether the alleged victim's statements are believable."].) Consistent with settled law, the CALCRIM No. 1193 instruction expressly precluded the use of Dr. Urquiza's testimony to find that defendant committed the charged and uncharged crimes. (*McAlpin, supra*, 53 Cal.3d at pp. 1300-1301.) The last sentence of the instruction told the jury it could consider CSAAS evidence only in deciding whether the conduct of Doe 1, Doe 2, Doe 3, and Doe 4 was consistent with the conduct of someone who had been molested. That is a proper use of CSAAS evidence. (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171; *People v. Bowker* (1988) 203 Cal.App.3d 385, 394; *Housley, supra,* 6 Cal.App.4th at p. 956; see *McAlpin,* at pp. 1298-1302.) Moreover, Dr. Urquiza testified he did not know the facts of this case and it was not his role to decide whether anyone was guilty or had been abused.[2] The trial court's instructions and Dr. Urquiza's testimony would not have caused the jury to believe it could use Dr.

---

[2] Defendant argues CSAAS testimony always suggests the complainant was abused because the expert always testifies that even if a child does not display "CSAAS behaviors," his or her behavior is still not inconsistent with that of an abused child. Defendant claims Dr. Urquiza testified to that effect. We do not consider the claim because the portion of the record defendant cites does not support his factual assertion.

Urquiza's testimony as evidence that defendant committed the charged or uncharged crimes. (*People v. Ramirez* (2023) 98 Cal.App.5th 175, 217-220 [rejecting contention that CALCRIM No. 1193 instruction improperly invited the jury to consider CSAAS evidence to support the complainant's allegations]; *People v. Ortiz* (2023) 96 Cal.App.5th 768, 815-816 [rejecting claim that CALCRIM No. 1193 instruction allowed the jury to use CSAAS evidence to find that the complainant was more believable]; *People v. Munch* (2020) 52 Cal.App.5th 464, 473-474 [rejecting claim that CALCRIM No. 1193 instruction effectively told the jury it may use CSAAS testimony as evidence of the defendant's guilt]; *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503-504 [rejecting claim that it is impossible to use CSAAS testimony to evaluate the complainant's testimony without using it as proof that the defendant committed the charged crimes].)

Counsel's closing statements to the jury do not change the probable effect of the instruction. (See generally *People v. Young* (2005) 34 Cal.4th 1149, 1202 [stating that a reviewing court must consider counsel's arguments in analyzing an instructional error claim].) The prosecutor's statements about the use of CSAAS testimony were consistent with the CALCRIM No. 1193 instruction. She said Dr. Urquiza knew nothing about the case and testified about misperceptions people had about child sexual abuse. Defendant's trial counsel similarly said Dr. Urquiza did not know the family and merely discussed "an umbrella term."

Defendant also contends CALCRIM No. 1193 is argumentative and favors the prosecution because it ignores the inference that the complainant's conduct might suggest falsity. An instruction is argumentative when it is " ' "of such a character as to invite the jury to draw inferences favorable to one of the parties from specified items of evidence." ' " (*People v. Woods* (2015) 241 Cal.App.4th 461, 488.) CALCRIM No. 1193 did not invite the jury to draw any particular conclusion about Dr. Urquiza's testimony or the credibility of Does 1 through 4. The jury was instructed that it must decide what the facts are, the jury alone must judge the credibility of the

16

witnesses, the jury was not required to accept expert witness testimony as true or correct, it was for the jury to decide the meaning and importance of any expert opinion testimony, and the jury may disregard any opinion it found unbelievable, unreasonable or unsupported by the evidence. The instructions gave the jury the option to accept or reject Dr. Urquiza's testimony and to believe or disbelieve Does 1 through 4. We reject defendant's instructional error arguments.

## VI

Citing *Kelly/Frye*, defendant contends the trial court erred in admitting CSAAS evidence because such evidence has not been scientifically accepted as a valid theory.

Defendant moved in limine to exclude CSAAS evidence under Evidence Code section 352, arguing the jury would use the evidence as proof that he molested the girls. Although the heading of his in limine motion states that CSAAS evidence lacked foundation, he did not develop the claim or assert that CSAAS evidence was inadmissible under *Kelly/Frye*. Consequently, his appellate claim is forfeited. (Evid. Code, § 353; *People v. Kaurish* (1990) 52 Cal.3d 648, 688.)

## VII

In addition, defendant contends that in imposing consecutive sentences, the trial court relied on improper or unsupported aggravating circumstances and did not consider his lack of a criminal record.

### A

Defendant's trial counsel requested the lowest possible sentence, stating that defendant was a good man, lacked a criminal record, and had a young son. But the trial court sentenced defendant to 15 years to life on each conviction based on the jury finding that the crimes had been committed against more than one victim. In doing so, the trial court recited the California Rules of Court, rule 4.425 and 4.421 factors along with the facts it considered in determining that consecutive sentences were appropriate. It found that the crimes and their objectives were predominantly independent of each other, they

17

involved separate acts of violence or threats of violence, they were committed at different times or separate places rather than as a single course of action, and they involved great violence, cruelty, or viciousness. The trial court also found that the victims were particularly vulnerable, the manner in which the crimes were carried out involved planning, defendant took advantage of a position of trust or confidence, and defendant engaged in conduct that indicated a serious danger to society.

B

Except under circumstances inapplicable here, a trial court must impose a sentence of 15 years to life in prison when the defendant is convicted of violating section 288, subdivision (a) against more than one victim. (§ 667.61, subds. (b), (c)(8), (e)(4).) It may impose sentences under section 667.61, subdivision (b) concurrently or consecutively. (*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1261-1263.)

"Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons [for its sentencing choices] are easily prevented and corrected if called to the court's attention." (*People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*).) Defendant must, therefore, raise sufficiently specific objections at the time of sentencing to allow the trial court to correct the errors. (*People v. De Soto* (1997) 54 Cal.App.4th 1, 4, 7-10.) Complaints about the manner in which the trial court exercised its discretion and articulated its supporting reasons cannot be raised for the first time on appeal. (*Scott,* at pp. 340, 356; *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100-1102; see *People v. Kelley* (1997) 52 Cal.App.4th 568, 582.)

When the trial court stated its reasons for imposing consecutive sentences, defendant did not object. Consequently, he failed to preserve his appellate claims for review. Defendant argues forfeiture does not apply because his consecutive sentences were unauthorized. But as the California Supreme Court has explained, forfeiture applies to a contention raised for the first time on appeal that a sentence otherwise permitted by

law was imposed in a procedurally or factually flawed manner. (*Scott, supra*, 9 Cal.4th at p. 354.) Fact-specific errors in the sentencing court's statement of reasons, such as that factors cited in support of a sentencing choice are inapplicable, do not result in an unauthorized sentence and cannot be raised for the first time on appeal. (*Id.* at pp. 355-356 and fn. 18.)

## VIII

Defendant further contends the alleged errors cumulatively deprived him of his constitutional right to due process of law. We reject the claim because defendant has not established error.

## DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
ROBIE, Acting P. J.

_____/S/_____
FEINBERG, J.